**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

In the Matter of:                                          }
JAMES LEONARD HINES                            }
SSN: XXX-XX-1984                                      }          Case No. 13-83104-CRJ-7
                                                                   }
              Debtor(s)                             }

JAMES LEONARD HINES                            }          Chapter 7
                                                                   }
              Plaintiff(s)                          }
vs.                                                                }
                                                                   }
SCOTTSBORO INVESTMENT GROUP, LLC     }
                                                                   }          AP No.  16-80041-CRJ-7
              Defendant(s)                        }
                                                                   }
                                                                   }
                                                                   }

# MEMORANDUM OPINION

Before the Court is the Complaint filed by James Hines, (hereinafter the "Debtor" or "Hines") against Scottsboro Investment Group, LLC (hereinafter the "Defendant" or "SIG") seeking an Order prohibiting the Defendant from exercising a Writ of Execution against homestead property owned by the Debtor and his non-Debtor wife as joint tenants with right of survivorship.

Also, before the Court is the Debtor's Motion to Avoid Judicial Lien pursuant to 11 U.S.C. § 522(f)(1)(A) filed on September 14, 2016 (the "2016 Motion to Avoid Lien"), the Defendant's Response in Opposition to Debtor's Motion to Avoid Judicial Lien, and the Debtor's Response and Additional Response to the Defendant's Opposition to Debtor's Motion to Avoid Judicial Lien.  The Debtor previously filed a Motion to Avoid the Defendant's judicial lien on March 11, 2014 with negative notice (the "2014 Motion to Avoid Judicial Lien").   No

1

response having been filed by the Defendant, on April 11, 2014, the Court entered an Order Avoiding Lien (the "2014 Order Avoiding Lien"). As will be discussed in further detail below, the Court declines the request of both parties to revisit this issue finding instead that the 2014 Order Avoiding Lien is a final order which conclusively resolved the lien avoidance issue in this case.

The Adversary Proceeding and the 2016 Motion to Avoid Lien came before the Court for trial on October 11, 2016. Although the Court encouraged the Debtor to seek legal representation, the Debtor proceeded with the trial without the assistance of legal counsel. Following the trial, the Court entered an Order Requiring Post-Trial Briefs to address the following issues:

1. The proper application of the formula set out in 11 U.S.C. § 522(f)(2)(A) for determining the extent to which the Defendant's judicial lien impairs the Debtor's exemptions where the judgment lien attaches to the Debtor's interest in jointly owned property.

2. The appropriate method for calculating the fair market value of the Debtor's interest in his homestead property and the amount of all other liens against the homestead property for purposes of calculating the extent of impairment pursuant to 11 U.S.C. § 522(f), and more specifically whether the values must be taken from the Debtor's schedules.

3. Whether ALA. CODE § 6-10-3 applies to involuntary conveyances, and more specifically whether the Debtor's wife must sign a deed assenting to the Defendant's execution against the Debtor's one-half interest in the homestead property.

The parties having submitted their Post-Trial Briefs, and the Court having considered the evidence and arguments of both parties, and for the reasons set forth below, finds that ALA. CODE § 6-10-3 does not apply to involuntary conveyances and that the Defendant may proceed with its state court remedies against the Debtor's property.

2

The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. Further, to the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

## STIPULATION OF FACTS

At the beginning of the trial, the parties stipulated to certain facts as they relate to the exemption and homestead issue in the Adversary Proceeding. The following Stipulated Facts are taken verbatim from the Defendant's Proposed Pretrial Order which was offered and admitted into evidence without objection by the Debtor:

**A. Stipulated Facts.**

1. On April 14, 2009, SIG filed a complaint in the Circuit Court of Jackson County, Alabama, Case No. 2009-000148 (the "Circuit Court"), against Hines for breach of contract.

2. On February 20, 2013, summary judgment was entered in favor of SIG and against Hines in the principal amount of $600,000, plus accrued interest, attorneys' fees and costs of the action.

3. On June 14, 2013, the Certificate of Judgment was recorded in Judgment Book 2013, Instrument No. 1048595, in the Probate Court of Jackson County, Alabama.

4. On October 7, 2013, (the "Petition Date"), Hines filed a voluntary petition under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq., (the "Bankruptcy Code") with this Court.

5. On January 28, 2016, Hines' [sic] moved this Honorable Court to abandon the Circuit Court Case No. CV-2013-000007, filed in Jackson County, Alabama [Doc. 105].

6. On February 24, 2016, this Honorable Court granted Hines' Motion [Doc. 109].

7. On March 15, 2016, SIG served a Writ of Execution upon Hines in order to execute on Hines' homestead, which is owned by Hines and his wife as joint tenants with the right of survivorship. More specifically, SIG seeks a one-half (1/2) undivided interest in Hines' property located at 203 Willowchase Drive, Scottsboro, Alabama, 35769 (the "Property").

8. On March 28, 2016, Hines filed a Motion to Quash Writ of Execution (the "Motion") arguing that SIG cannot execute on his homestead without his wife's signature, assenting to the deed, mortgage or other conveyance.

9. On May 4, 2016, the Circuit Court heard the Motion, considered the evidence submitted by the parties, and entered an order (the "Order") denying Hines' Motion and granting SIG's request to proceed with execution.

10. On May 26, 2016, Hines filed a Motion to Alter, Amend or Vacate the May 4, 2016 Circuit Court Order.

11. On August 12, 2016, the Motion was denied.[1]

Additionally, the parties stipulated to paragraphs one through nine set forth in the

Defendant's Response in Opposition to Debtor's Motion to Avoid Judicial Lien:

1. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(a). This matter is a core proceeding as provided by 28 U.S.C. § 157(b)(2)(K).

2. In March of 1993, Debtor and his wife acquired 203 Willowchase Dr., Scottsboro, Jackson County, Alabama (the "Property") as joint tenants with right of survivorship.

3. Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 3, 2013.[2] At the time of the filing, Debtor owned and claimed a homestead exemption of Property.

4. The Property is subject to the following mortgages or judicial liens, which do not secure a debt of the kind set forth in 11 U.S.C. § 523(a)(5)(domestic support obligations):

   a. Mortgage obtained by Regions Bank on June 7, 2004.

   b. Judicial Lien obtained by SIG on June 10, 2013.

---

[1] Defendant's Proposed Pretrial Order.

[2] The Court takes judicial notice that the Debtor filed his petition on October 7, 2013.

4

5. Debtor is entitled to an exemption in the Property in the amount of $5,000 pursuant to Alabama Code § 6-10-2.

6. Based upon the Tax Assessor's valuation of the Property on the Petition date and today, the Property has a fair market value of $288,000.00.

7. The payoff on the Regions Bank mortgage is $70,994.86.

8. 11 U.S.C. § 522(f)(2)(A) of the Bankruptcy Code provided that "a lien shall be considered to impair an exemption to the extent that the sum of – (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens." 11 U.S.C. § 522(f)(2)(B) provides that "[i]n the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to the other liens."

9. A formula set forth in 11 U.S.C. § 522(f)(2) is used for determining whether a lien impairs an exemption.[3]

Although the parties stipulated to paragraphs one through nine of the Defendant's Response in Opposition to Debtor's Motion to Avoid Judicial Lien, the Court finds that the Debtor, proceeding as a *pro se* litigant, did not clearly concede that his residence had a fair market value of $288,000 nor that the payoff on Regions Bank's mortgage was $70,994.86 for purposes of calculating lien avoidance pursuant to 11 U.S.C. § 522(f). Instead, at trial the Debtor testified that on the petition date the fair market value of his home was $200,000 and argued that the mortgage lien was $77,387.49, as set forth in his Schedules.

To support the Debtor's proposed valuation of his home and the amount of the mortgage lien against the property, the Debtor offered Exhibit B which contains the Debtor's method for calculating lien avoidance under 11 U.S.C. § 522(f)(2)(A) using the Debtor's proposed values.

---

[3]     Defendant's Response in Opposition to Debtor's Motion to Avoid Judicial Lien, ECF No. 146 (reference to attached exhibits omitted).

5

The Court took the admissibility of Exhibit B under advisement at the conclusion of the trial. "Courts have generally held that an owner is competent to give his opinion on the value of his property."[4] Accordingly, the Court finds that Exhibit B is admissible to the limited extent the Debtor seeks to offer the exhibit as evidence of his opinion, as the owner of the property, of the fair market value of his home on the petition date.

At trial, the Debtor also offered and the Court admitted pages one and two of Debtor's Exhibit C which included a certified copy of the 2014 Order Avoiding Lien which reads in full as follows:

### ORDER AVOIDING LIEN

The Debtor filed a Motion to Avoid a Lien pursuant to 11 U.S.C. § 522(f). Notice and opportunity for a hearing to object to said Motion was given and no objections were filed. It appears to the Court that said Motion is due to be **GRANTED**.

It is therefore **ORDERED, ADJUGED, and DECREED** that the **Lien** of **Scottsboro Investment Group LLC Book 2013 instrument # 1048595 Jackson County, AL is AVOIDED** to the extent that said lien impairs the Debtor's exemptions.[5]

### ARGUMENTS

---

[4]  Russell, 2 *Bankruptcy Evidence Manual,* 701:2 (2014-15 ed.); *Saucier v. Quantum Varde Asset Fund, LLC (In re Saucier)*, 353 B.R. 383, 387(Bankr. D. Conn. 2006)(admitting *pro se* Debtor's testimony regarding the value of his own property for purposes of avoiding a judicial lien).

[5]  Debtor's Exhibit C, pages 1 and 2. As part of Exhibit C, the Debtor also offered the 2014 Motion to Avoid Lien as evidence of the value of the Defendant's remaining lien as determined by the 2014 Order Avoiding Lien. The Court sustained the Defendant's objection to the admissibility of the 2014 Motion to Avoid Lien because the pleading was not attached to the 2014 Order Avoiding Lien. Accordingly, the 2014 Motion to Avoid Lien was not admitted into evidence.

6

The Debtor's Complaint contains the following claims: (1) the Debtor's residence remained property of estate when the Defendant filed the Writ of Execution on March 15, 2016; (2) the Defendant's judicial lien is void in its entirety, even as to any excess value in the property over the homestead exemption, by virtue of ALA. CODE § 6-10-3 pursuant to which the signature and assent of the Debtor's wife is necessary to effectuate the "conveyance" of their homestead property; and (3) alternatively, the Defendant's lien has forever been reduced to $56,009.37 pursuant to the 2014 Order Avoiding Lien.

The Defendant argues that the Supreme Court of Alabama permits execution by a judgment creditor against property owned by a husband and wife as joint tenants with right of survivorship if the Debtor's equity in the homestead exceeds $5,000.

## CONCLUSIONS OF LAW

1. Before addressing the issues presented in the Adversary Proceeding, the Court will consider the effect of the 2014 Order Avoiding Lien on the Debtor's 2016 Motion to Avoid Lien pursuant to which the Debtor seeks to recalculate the extent of the impairment under 11 U.S.C. § 522(f) and to reduce the Defendant's judicial lien to $17,612.51.

2. Under § 522(f), a debtor may avoid the fixing of a judicial lien on the debtor's interest in property to the extent that the lien impairs the debtor's exemption in the property. The statutory formula for calculating the extent to which a lien impairs an exemption is set forth in 11 U.S.C. § 522(f)(2)(A) which provides as follows:

> (2)(A) For purposes of this subsection, a lien shall be considered to impair an exemption to the extent the sum of –
>
> (i) the lien;
>
> (ii) all other liens on the property; and

7

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.[6]

3. Although the Defendant did not file an Objection to the 2014 Motion to Avoid Lien which sought to reduce the Defendant's lien using figures taken from the Debtor's Schedules, the Defendant now argues that it is appropriate for this Court to "revisit" this issue because the 2014 Order Avoiding Lien did not determine the value of the Defendant's remaining judicial lien against the Debtor's residence. Interestingly, although the Defendant did not file a response nor objection to the 2014 Motion to Avoid Lien, the Defendant now argues that its judicial lien should only be reduced to $103,502.57 using the values set forth in the Defendant's Response in Opposition to Debtor's Motion to Avoid Lien.

4. Although the parties have each invited the Court to "revisit" the issue and determine the value of the Defendant's remaining judicial lien, the Court finds that, as a result of the 2014 Order Avoiding Lien, the relief sought in the 2016 Motion to Avoid Lien is barred by the doctrine of *res judicata*.

5. Under the doctrine of "*res judicata*, a final judgment on the merits bars the parties to a prior action from relitigating a cause of action that was or could have been raised in that action."[7]

6. "For res judicata to bar a subsequent case, four elements must be present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases."[8]

---

[6] 11 U.S.C. § 522(f)(2)(A).

[7] *Smith v. Atlantic Southern Bank (In re Smith)*, 522 Fed. Appx. 760 (11th Cir. 2013).

[8] *United States v. Beane*, 841 F.3d 1273 (11th Cir. 2016).

8

7.  In the case before the Court, there is no dispute regarding elements two through four as this Court had jurisdiction to enter the 2014 Order Avoiding Lien, the parties to both the 2014 Motion to Avoid Lien and the 2016 Motion to Avoid Lien are identical, and the same cause of action is involved in both Motions. Accordingly, the only issue is whether the 2014 Order Avoiding Lien was a final judgment on the merits.

8.  In the case of *In re Phillips*, 553 B.R. 536 (Bankr. E.D.N.C. 2016), the bankruptcy court determined that the conversion of a Chapter 13 case to one under Chapter 7 did not affect the validity of an order avoiding lien entered during the Chapter 13 case. The bankruptcy court explained that an order avoiding a lien pursuant to 11 U.S.C. § 522(f) is an enforceable final order.[9] Accordingly, the subsequent Chapter 7 avoidance motion was barred by the doctrine of *res judicata*. *See also Ramos v. Negron (In re Ramos)*, 498 B.R. 401 (B.A.P. 1st Cir. 2013)(finding that an order denying a Chapter 7 debtor's motion to avoid judgment lien on exemption impairment grounds was a final appealable order); *Premier Capital, Inc. v. Pagnini (In re Pagnini)*, 433 B.R. 455, 458 (B.A.P. 1st Cir. 2010)(explaining that an order granting a motion to avoid judicial lien is a final order which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment).

9.  Accordingly, the Court finds that the parties are barred by the doctrine of *res judicata* from relitigating the issue of lien avoidance because (1) the 2014 Order Avoiding Lien was a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties are identical; and (4) the same cause of action is involved in both Motions.

---

[9]  *In re Phillips*, 553 B.R. 536, 548 (Bankr. E.D.N.C. 2016).

9

10. The Court will not, however, leave the parties or another court to speculate regarding the extent to which the Defendant's lien was avoided by the 2014 Order Avoiding Lien as the Eleventh Circuit has explained that the "bankruptcy judge who has presided over a case from its inception is in the best position to clarify any apparent inconsistencies in the court's rulings."[10]

11. In this case, the Defendant did not oppose the Debtor's 2014 Motion to Avoid Judicial Lien, and the Defendant offers no explanation for its failure to respond to the 2014 Motion to Avoid Lien or to appeal the 2014 Order Avoiding Lien. For the first time, the Defendant now questions the value that the Debtor placed on his homestead in both his Schedules and on the 2014 Motion to Avoid Lien. The only evidence submitted at trial by the Defendant as to the value of the Debtor's home is the Stipulation regarding the Tax Assessor's valuation of the property on the petition date that the property had a fair market value of $288,000. However, even accepting the Stipulation as evidence of the tax assessed value of the Debtor's residence, the Tax Assessment is not conclusive proof of the fair market value of the Debtor's residence on the petition date. "Alabama courts have long embraced the principal that generally the tax assessing authority's evaluation is not relevant when offered to prove market value. The rational underlying this general exclusionary rule is that it is notorious that properties are not assessed at anything like true value or market value."[11]

12. Routinely, a no-asset Chapter 7 case is closed within a few months following the § 341 Meeting of Creditors. However, the Debtor's Chapter 7 case has remained pending because

---

[10]     *Finova Capital Corp. v. Larson Pharmacy, Inc. (In re Optical Technologies, Inc.)*, 425 F.3d 1294, 1300 (11th Cir. 2005)(deferring to the bankruptcy court's interpretation of its order confirming Fourth Amended Plan, unless it clearly abused its discretion).

[11]     *In re Sharp*, 425 B.R. 620 (Bankr. N.D. Ala. 2010)(quoting McElroy's Alabama Evidence § 267.04 at 1310 (5th Ed. 1996)).

the Chapter 7 Trustee filed a Request for Case Status Change to Asset Case on April 23, 2014 requesting that the Debtor's case be officially changed to an asset case. Had this been a routine no-asset Chapter 7 case in which the case was closed within a few months following the § 341 Meeting of Creditors, any court subsequently reviewing the 2014 Order Avoiding Lien would have received no further guidance regarding the extent to which the Defendant's lien impaired the Debtor's exemptions beyond what was a matter of record in the Bankruptcy court when the 2014 Order Avoiding Lien was entered.

13. In the case of *American Bank v. Leasing Serv. Corp. (In re Air Conditioning, Inc.)*, 845 F.2d 293 (11th Cir. 1988), the Eleventh Circuit held that a Chapter 7 debtor's Schedules were binding on a creditor in a § 547 action where the creditor failed to object to the Schedules at trial. In this case, the only evidence before the Court when the 2014 Order Avoiding Lien was entered were the values set forth in the Debtor's bankruptcy Schedules.

14. When the Debtor filed his petition on October 7, 2013, on Schedule C – Property Claimed as Exempt, the Debtor claimed an exemption pursuant to ALA. CODE § 6-10-2 in his homestead in the amount of $5,000 and valued the property at $200,000. On Schedule D – Creditors Holding Secured Claims, the Debtor listed the Defendant's judicial lien as a secured claim in the amount of $896,818.20. The Debtor also listed Regions Bank as a secured creditor on Schedule D, secured by a mortgage on the Debtor's residence in the amount of $77,387.49.

15. In support of the 2016 Motion to Avoid Judicial Lien, the Debtor now argues that the correct method for computing the extent to which the Defendant's judicial lien impairs the Debtor's exemption is controlled by the cases of *Kolich v. Antioch Laurel Veterinary Hosp. (In re Kolich)*, 328 F.3d 406 (8th Cir. 2003)(holding that a junior mortgage lien should be included in the formula for calculating impairment) and *Zeigler Engineering Sales, Inc. v. Cozad (In*

11

*re Cozad),* 208 B.R. 495 (B.A.P. 10th Cir. 1997)(holding that § 522(f)(2)(A) requires a court to determine exemption impairment by subtracting the total amount of liens against the property plus the debtor's homestead exemption from the debtor's one-half interest in jointly owned property).

16. In his Post-Trial Brief, the Debtor argues that *In re Kolich* overrules the case of *In re Lehman,* 205 F.3d 1255 (11th Cir. 2000) in which the Eleventh Circuit held in circumstances almost identical to that now before this Court that in calculating the extent to which a judicial lien could be avoided, the bankruptcy court properly used the total value of the home owned by the Chapter 7 debtor and his non-debtor spouse, rather than the debtor's one-half interest in the property.

17. It is a fundamental principal of law that one Circuit Court decision is not binding precedent on any other Circuit Court regardless of when the Circuit Court decisions were entered. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 278 (6th Cir. 2010)(explaining that Circuit Courts "are not bound by the law of other Circuits," instead "'each [federal court] has an obligation to engage independently in reasoned analysis").

18. As a Bankruptcy Court in the Eleventh Circuit, this Court is indeed bound by the Eleventh Circuit's *In re Lehman* decision which remains good law within this Circuit. Accordingly, applying the formula adopted by *In re Lehman* and using the uncontested figures in the Debtor's Schedules at the time when the Debtor filed the 2014 Motion to Avoid Lien, the Court finds that the 2014 Order Avoiding Lien reduced the Defendant's judicial lien to $56,306.25, calculated as follows:

| | |
|---|---|
| $200,000.00 | Fair Market Value |
| -$ 77,387.49 | Regions Bank mortgage |
| $122,612.51 | Equity |
| $ 61,306.25 | Debtor's ½ interest |

12

-$   5,000.00                Homestead Exemption
$  56,306.25               Non-Exempt Equity

19. Turning now to the issues raised in the Debtor's Adversary Proceeding, the Court finds that the Defendant's judicial lien attached to the Debtor's interest in the property that he owns with his wife as a joint tenant with right of survivorship, and that the Debtor's undivided one-half interest in the property is subject to sale under execution under Alabama law, notwithstanding the constraint against alienation of homestead property by married persons found in ALA. CODE § 6-10-3 which provides as follows:

> No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, which must be shown by his or her examination before an officer authorized by law to take acknowledgments of deeds, and the certificate of such officer upon, or attached to, such mortgage deed, or other conveyance, which certificate must be substantially in the form of acknowledgment for individuals prescribed by Section 35-4-29.[12]

20. The Supreme Court of Alabama has recognized that the "purpose of this statute is to protect one spouse from the conveyance of the homestead by the other spouse without the first spouse's consent."[13]   However, in this instance, the Debtor seeks to use the statute defensively against a judgment creditor.  The matter before the Court is distinguishable from a voluntary conveyance by one spouse of homestead property without the consent of the other spouse which ALA. CODE § 6-10-3 prohibits because it involves an involuntary lien obtained through a judicial proceeding that is never approved by signature of the spouse.

---

[12]      ALA. CODE § 6-10-3 (1975).

[13]      *Yeager v. Lucy*, 998 So.2d 460, 464 (Ala. 2008)(finding deed transferring wife's property to her children was invalid without her husband's signature).

13

21. The Debtor has cited several cases in support of his argument that the Defendant's judicial lien is void in its entirety pursuant to ALA. CODE § 6-10-3; however, all of these decisions involved voluntary conveyances by a spouse and none of the decisions cited by the Debtor held that involuntary judicial liens are void as to homestead property without the wife's assent to the judicial lien. *See Sims v. Cox*, 611 So.2d 339 (Ala. 1992)(holding that husband's conveyance by deed to his daughter and son-in-law during his wife's lifetime, without her signature or assent, was void in its entirety); *Worthington v. Palughi*, 575 So.2d 1092 (Ala. 1991)(holding that wife's conveyance by deed to her daughter of her one-half interest in homestead property was void where the husband did not assent to the conveyance); *Gowens v. Goss*, 561 So.2d 519 (Ala. 1990)(wife's assent to conveyance by deed was not necessary where the property was no longer homestead property); *Gardner v. Roberts*, 565 So.2d 638 (Ala. 1990)(absence of spouse's signature and assent to deed rendered deed void); *Durant v. Hambrick*, 409 So.2d 731, 735 (Ala. 1981)(canceling a conveyance from the plaintiff's deceased wife to her son); *People's Bank of Red Level v . Barrow & Wiggins*, 94 So. 600 (Ala. 1922)(payment to wife for the release of her dower and homestead rights in 79 acres of land was based on valuable consideration, making the conveyance bona fide so that her husband's creditors could not garnish the funds).

22. In his Post-Trial Brief, the Debtor also cites the case of *In re Cassity*, 281 B.R. 365 (Bankr. S.D. Ala 2001) in which the bankruptcy court sustained a Chapter 7 trustee's objection to homestead exemption claimed by the debtor-husband in property owned in fee simple by his wife. The bankruptcy court held that the husband's interest in the homestead was an inchoate interest under Alabama law, and because the inchoate interest was not one upon which any creditor could levy or execute, it was not protected by Alabama's homestead exemption. The

14

bankruptcy court rejected the debtors' argument that ALA. CODE § 6-10-3 transformed the husband's interest into a property interest for homestead purposes. The bankruptcy court explained as follows:

> Debtors allege that the fact that Mr. Cassity would have to sign any deed his spouse executes to transfer the property makes this interest a property interest sufficient for homestead purposes. However, this does not change the result. Ala. Code § 6-10-3 (Michie 1993). Section 6-10-3 does not make the interest of the spouse a seizable interest. The statute is a protection for a spouse who does not have an otherwise protectable interest. Without this statute a spouse would have not a right to prevent a sale of the homestead in which he or she is living. E.g., *Peoples Bank of Red Level v. Barrow*, 208 Ala. 433, 94 So. 600 (1922)(pre-1975 recodification). If the spouse had a present property interest, such as a joint tenancy or undivided interest or cotenancy, the spouse would not need the protection of Section 6-10-3. Any deed would require that spouse's signature. Precisely because the spouse with only a dower or inchoate interest has only an expectancy, the statute is necessary. Without it, the spouse's signature would be required.[14]

23. Accordingly, *In re Cassity* appears to suggest that ALA. CODE § 6-10-3 is limited to situations involving a spouse who holds only an inchoate interest in the homestead property.

24. Nevertheless, the Debtor argues that the Defendant's judicial lien against his homestead property is a "conveyance" for purposes of ALA. CODE § 6-10-3 to which his wife must consent. In the case of *Ex parte Arvest Bank,* 2016 WL 4943250 (Ala. 2016), the Supreme Court of Alabama recently explained the difference between voluntary mortgage conveyances and judgment liens as follows:

> Unlike a mortgage, a lien does not transfer ownership of property; it simply gives the judgment creditor a claim against any property owned by the judgment debtor. *See Wozniak v. Wozniak*, 121 Wis. 2d 330, 334, 359 N.W.2d 149 (1984)(explaining that '[w]hile a mortgage serves as security for a particular piece of property, a judgment lien ordinarily is not a lien on any specific real estate of the judgment debtor but is a general lien on

---

[14] *In re Cassity*, 281 B.R. 365, 367 (Bankr. S.D. Ala. 2001).

all of the debtor's real property").  Hence a lien by itself does not interfere with the unites of joint tenancy or cause a severance thereof.[15]

25. The issue before the Supreme Court of Alabama in the case of *Ex parte Arvest Bank* was whether a judgment creditor's lien against property owned by a husband and wife as joint tenants with right of survivorship was extinguished when the husband died. Although it is unclear whether the property at issue in *Ex parte Arvest Bank* was homestead property as the opinion never clearly states one way or the other, the case provides an excellent analysis of the effect under Alabama law that a judgment lien has against property owned by joint tenants with right of survivorship. The Supreme Court of Alabama concluded that the judgment creditor's lien was extinguished upon the husband's death because "a surviving joint tenant becomes the absolute owner of the property held in joint tenancy upon the death of the cotenant, <u>free of the claims of heirs</u>, because the survivor does not acquire title through the deceased but by virtue of the deed."[16]  The Alabama Supreme Court explained the reasoning and fairness of this rule as follows:

> It is well settled in this and other states that, *while all joint tenants are alive, execution may be had upon the interest of one of the joint tenants, and that upon the purchase of the interest of that joint tenant at execution sale the joint tenancy is severed and the purchaser and the other joint tenant or tenants become tenants in common*.  The question, in the present case, is whether a judgment lien on the interest of one joint tenant prior to execution severs the joint tenancy.  We are of the opinion that it does not.
>
> The right of survivorship is the chief characteristic that distinguishes a joint tenancy from other interest in other property.  The surviving joint tenant does not secure that right from the deceased joint tenant, but from the devise of conveyance by which the joint tenancy was first created.  While both joint tenants are alive each has a specialized form of a life

---

[15]     *Ex parte Arvest Bank*, 2016 WL 4943250 *6 (Ala. 2016).

[16]     *Ex parte Arvest Bank*, 2016 WL 4943250 *8 (Ala. 2016).

16

estate, with what amounts to a contingent remainder in the fee, the contingency being dependent upon which joint tenant survives. The judgment lien of respondent could attach only to the interest of his debtor. . . . That interest terminated upon [the debtor's] death. After his death, there was no interest to levy upon. Although the title of the execution purchaser dates back to the date of his lien, that doctrine only applies when the rights of innocent third parties have not intervened. Here the rights of the surviving joint tenant intervened between the date of the lien and the date of the sale. On the latter date the deceased joint tenant had no interest in the property, and his judgment creditor has no greater rights.

This rule is sound in theory and fair in its operation. *When a creditor has a judgment lien against the interest of one joint tenant he can immediately execute and sell the interest of his judgment debtor, and thus sever the joint tenancy,* or he can keep his lien alive and wait until the joint tenancy is terminated by the death of one of the joint tenants. If the judgment debtor survives, the judgment lien attaches to the entire property. If the judgment debtor is the first to die, the lien is lost. If the creditor sits back to await this contingency, as respondent did in this case, he assumes the risk of losing his lien.[17]

26. Although the Supreme Court of Alabama held that the judgment creditor was not entitled to obtain a Writ of Execution on its judgment lien against the property at issue after the judgment debtor's death, the Court recognized the judgment creditor's right to immediately execute and sell the interest of the judgment debtor during his life.

27. The Debtor has cited no cases and the Court has not otherwise found any cases in which ALA. CODE § 6-10-3 has been applied to prevent a judgment creditor from executing against a judgment debtor's undivided one-half interest in homestead property. The Court therefore finds that the statue does not apply to involuntary

---

[17] *Ex parte Arvest Bank,* 2016 WL 4943250 *10 (Ala. 2016)(*quoting Zeigler v. Bonnell,* 52 Cal. App.2d 217, 219-22 (1942)(emphasis added)(internal citations omitted); *See also Nunn v. Keith*, 268 So. 2d 792 (Ala. 1972)(explaining that a joint tenancy with right of survivorship is a destructible property interest).

17

conveyances and that the wife's consent is not required for the Defendant to proceed with execution of its judgment.

28. Finally, the Court will address the Debtor's contention that his homestead property remained property of the estate when the Defendant served the Writ of Execution on March 15, 2016. "When a debtor files a Chapter 7 petition, his assets, with specified exemptions, are immediately transferred to a bankruptcy estate. § 541(a)(1). A Chapter 7 trustee is then charged with selling the property in the estate, § 704(a)(1), and distributing the proceeds to the debtor's creditors, § 726."[18]

29. Property of the estate is broadly defined, "encompassing 'all legal or equitable interest of the debtor in property . . . Thus, 'every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is [property of the estate] within the reach of § 541.'"[19]

30. Section 362(c)(2) "allows an act to proceed against the debtor individually or against property *that is not property of the estate* once the discharge is entered."[20] On February 11, 2014, the Court entered the Debtor's Chapter 7 discharge in this case. Accordingly, the stay lifted pursuant to 11 U.S.C. § 362(c)(2) as to the Debtor and property that was not property of the estate effective February 11, 2014.

31. With respect to property of the estate, 11 U.S.C. § 362(c)(1) provides that "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate."[21] Thus, the question becomes whether the

---

[18] *Harris v. Viegelahn*, 135 S. Ct. 1829, 1836 (2015).

[19] *LB Steel, LLC v. Walsh Constr. Co. (In re LB Steel, LLC)*, 547 B.R. 790, 796 (Bankr. N.D. Ill. 2016).

[20] *In re Killmer*, 501 B.R. 208, 213 (Bankr. S.D.N.Y. 2013).

18

Debtor's home remained property of the estate when the Defendant served the Writ of Execution on March 15, 2016.

32.  The Defendant suggests that the Order entered by this Court on February 24, 2016 granting the Debtor's Motion to Abandon Civil Court Case also lifted the stay as to the Debtor's homestead property.   However, the Order on Debtor's Motion to Abandon Civil Court Case had the limited effect of abandoning a civil action in which the Debtor is a plaintiff pursuing a cause of action against the Defendant and others.

33.  Section 554(d) provides that "[u]nless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."[22]   In the case of *In re Killmer*, 513 B.R. 41 (Bankr. S.D.N.Y. 2014), the bankruptcy court held that a county taxing authority was not entitled to retroactive relief from the automatic stay in order to validate a tax sale conducted in violation of the stay.   The bankruptcy court explained that "the automatic stay ceases to protect the individual debtor once a discharge is entered but the stay continues to protect *property of the estate* after the discharge order is entered and until the case is closed or the property is formally abandoned."[23]   The bankruptcy court explained that the distinction is significant, writing:

> In many chapter 7 cases a discharge order is entered as matter of course once the deadline to object to a debtor's discharge has passed.   The entry of the discharge order does not affect the chapter 7 trustee, who often continues to investigate the pre-petition assets of the debtor and tracks down property of the estate after its entry. The automatic stay is necessary to protect property of the estate that the chapter 7 trustee is investigating and liquidating for the benefit of creditors.

---

[21]      11 U.S.C. § 362(c)(1).
[22]      11 U.S.C. § 554(d).

[23]      *In re Killmer*, 513 B.R. 41, 50 (Bankr. S.D.N.Y. 2014).

19

The scenario that occurred in this case is exactly the scenario that Congress sought to prevent in enacting § 362(c)(2). The order discharging the Debtor was entered on February 13, 2008. The discharge order eliminated the Debtor's legal obligation to pay a pre-petition debt; it did not affect property of the estate in any way. Prior to the discharge order being entered on January 29, 2008, the chapter 7 trustee filed his notice of possible dividends on January 29, 2008, indicating that he believed that there may be property of the estate that he could liquidate and distribute to the Debtor's unsecured creditors. The notice did not indicate what property he intended to liquidate so there would be no way for Dutchess County to know whether the trustee intended to sell the Property or not. By holding the Tax Sale, the County deprived the chapter 7 trustee of his ability to liquidate that property for the benefit of creditors. It is for this reason that property of the estate continues to be protected by the automatic stay.[24]

34. In this case, on April 27, 2016, the Trustee Chapter 7 filed the Final Report in which she reported that "[a]ll scheduled and known assets of the estate have been reduced to cash, released to the debtor as exempt property pursuant to 11 U.S.C. § 522, or have been or will be abandoned pursuant to 11 U.S.C. § 544."[25] On May 25, 2016, the Court entered an Order Approving Trustee's Final Report and Account and Allowing Application of Judith Thompson, Trustee for Final Compensation and Expenses. Accordingly, the Trustee's abandonment or release of the homestead property was not effective until May 25, 2016 when this Court entered the Order Approving Final Report.

35. When the Defendant served the Writ of Execution on March 15, 2016, the property remained property of the estate. The stay subsequently lifted as to the property effective May 25, 2016. Although it does appear that the Writ of Execution was initially served in violation of the stay, the Court finds that the only harm caused by the technical violation has been to delay the closing of this bankruptcy case. Had the Defendant waited for the Trustee to file

---

[24] *In re Killmer*, 513 B.R. 41, 50 (Bankr. S.D.N.Y. 2014)(docket citations omitted).

[25] ECF No. 117.

Case 16-80041-CRJ    Doc 38    Filed 01/10/17    Entered 01/10/17 11:39:39    Desc Main
Document      Page 20 of 21

her Final Report, this case would have been closed months ago freeing the parties to pursue their state law remedies without the protection of this Court.

### CONCLUSION

The 2014 Order Avoiding Lien is a final order which reduced the Defendant's judicial lien to $56,306.25. Accordingly, the 2016 Motion to Avoid Lien is barred by the doctrine of *res judicata.*

Although the Debtor's residence remained property of estate when the Defendant served the Writ of Execution, the stay subsequently lifted pursuant to 11 U.S.C.§ 362(c)(1) on May 25, 2016 when the Court entered the Order Approving Trustee's Final Report.

The Court further finds that the Debtor's undivided one-half interest in the homestead property is subject to sale under execution under Alabama law, notwithstanding the constraint against involuntary alienation of homestead property by married persons found in ALA. CODE § 6-10-3. Accordingly, the Defendant may proceed with its state court remedies against the Debtor's undivided one-half interest in the homestead property.

An Order consistent with this Memorandum Opinion will be entered separately.

**IT IS SO ORDERED** this the 10th day of January 2017.

/s/  Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge

21